United States District Court
Southern District of Texas
**ENTERED**
September 20, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARVEY GULF INTERNATIONAL MARINE, INC., | § | |
| | § | |
| *Appellant*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-2798 |
| | § | |
| BENNU OIL & GAS, LLC, | § | |
| | § | |
| *Appellee*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is an appeal by Harvey Gulf International Marine, Inc. ("Harvey Gulf") from the Bankruptcy Court's memorandum opinion granting appellee, Bennu Oil & Gas, LLC's ("Bennu") motion for summary judgment and the amended judgment. Dkt. 2, Ex. 2 at 1597, 1793. After considering the arguments, the related briefing, the evidence of record, and the applicable law, the Bankruptcy Court's order granting summary judgment is AFFIRMED. Harvey Gulf requests oral submission of this matter, but the court does not find it necessary. Therefore, Harvey Gulf's request for oral submission is DENIED.

**I. BACKGROUND**

This case arises out of a Chapter 11 bankruptcy proceeding initiated by ATP Oil & Gas Corporation ("ATP") and involves whether Harvey Gulf has a Senior Lien on ATP's assets, which are now owned by Bennu. From May 31, 2009, until approximately April 29, 2010, Harvey Gulf provided towing and transportation services for ATP in connection with certain federal oil and gas lease blocks on the Outer Continental Shelf—Gulf of Mexico off the coast of Louisiana ("Telemark Field"). Dkts. 2, 5, 6. There was an undisputed 352-day gap in services from April 29, 2010, until

April 16, 2011. Dkt. 2, Ex. 2 at 425. Harvey Gulf resumed its services on the Telemark Field on April 16, 2011, and continued working for ATP until April 7, 2012. *Id.* at 469.

On August 17, 2012, ATP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Dkt. 2, Ex. 6. On September 21, 2012, the Bankruptcy Court issued a Final Debtor In Possession Order. *Id.* The order defined "Senior Prior Liens" as liens that are senior in priority to the "Prepetition Liens," which are those liens that were attached and perfected no later than June 21, 2010 ("Senior Lien Deadline"). *Id.* Prepetition liens are valid, binding, enforceable, non-avoidable and perfected as of August 17, 2012, the date when ATP filed for Chapter 11 relief. Dkts. 2, 6. On October 17, 2013, the Bankruptcy Court issued a Final Order (A) Approving the Sale of Certain of the Debtor's Assets Free and Clear of Claims and Liens and (B) Approving the Assumption and Assignment of Contracts and Leases. *Id.* This Final Order approved the sale of ATP's interest in the Telemark Field for, *inter alia*, $55,000,000.00 set aside to fund an escrow account to satisfy Senior Liens. Dkts. 5 at 8, 6 at 4. For the purpose of determining relative priority among lien holders, claimants were required to file a Statement of Lien with the earliest date to which their liens relate back. Dkt. 3, Ex. 2 at 93.

Harvey Gulf claims ATP failed to pay it $2,885,133.50 for the services Harvey Gulf provided to ATP between February 14, 2012, until April 7, 2012. Dkts. 3, Ex. 2 at 34; 5 at 7. On February 11, 2013, Harvey Gulf filed its original Statement of Lien in the Bankruptcy Court, and then four days later it filed its Supplemental Lien Identification Statement maintaining that the relation back date was May 30, 2011, which is after the Senior Lien Deadline. Dkt. 2, Ex. 2 at 475. Seven months later, on September 4, 2013, Harvey Gulf filed its original complaint listing a different relation back date of March 30, 2011. *Id.* at 480. Then about a year and a half after Harvey Gulf filed its original Statement of Lien, it filed an Amended Lien Identification Statement and a Supplemental and

2

Amended Complaint changing the relation back date to May 31, 2009. *Id.* at 475-481. Harvey Gulf continues to stand by this date in this appeal. Dkts. 5, 7.

Harvey Gulf contended in the Bankruptcy Court that it has a Senior Lien because a contract it signed with ATP allowed the relation back date to start when Harvey Gulf first provided services to ATP, even though the work for which Harvey Gulf seeks to be paid was provided in 2012. Dkt. 5 at 8-11. The key document in this appeal is a Farmout Agreement signed by ATP and Harvey Gulf with a provision that all work provided by Harvey Gulf "shall not be deemed to be interrupted or cease for lien purposes." Dkt. 5 at 5. On August 25, 2015, the Bankruptcy Court granted Bennu's motion for summary judgment. Dkt. 2, Ex. 2 at 1597. The Bankruptcy Court found that Harvey Gulf's alleged statutory liens did not constitute Senior Liens because the Louisiana Oil Well Lien Act forecloses Harvey Gulf's relation back argument. *Id.* The court issued an amended judgment on October 6, 2015, consistent with the findings of its memorandum opinion. *Id.* at 1793. Harvey Gulf disagreed and timely appealed to this court the Bankruptcy Court's summary judgment order and the amended judgment. Dkts. 1, 5. The court will now discuss the standard of review of a bankruptcy court's decision and will go on to address Harvey Gulf's arguments.

## II. STANDARD OF REVIEW

In reviewing a decision of the Bankruptcy Court, this court functions as an appellate court, applying the standards of review generally applied in federal appeals courts. *Webb v. Reserve Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103–04 (5th Cir. 1992). *See also Coston v. Bank of Mavren* (*In re Coston*), 991 F.2d 257, 261 n.3 (5th Cir. 1993) (en banc) (citing *Griffith v. Oles* (*In re Hipp, Inc.*), 895 F.2d 1503, 1517 (5th Cir. 1990)). This court reviews orders granting summary judgment de novo, guided by the same standard as the Bankruptcy Court: Federal Rule of Civil Procedure 56.

*In re Oparaji*, 698 F. 3d 231, 235 (5th Cir. 2012); *In re Camey*, 258 F. 3d 415, 418 (5th Cir. 2001) (citing *Stults v. Conoco. Inc.* 76 F.32 651, 654 (5th Cir. 1996)).

### III. ANALYSIS

Harvey Gulf seeks de novo review on whether the Bankruptcy Court erred when it granted summary judgment and awarded costs against Harvey Gulf after the court ruled that Harvey Gulf did not have a Senior Lien for its work in 2012. Harvey Gulf contends that the language in the Farmout Agreement clearly provided that Harvey Gulf's gap in work would not be deemed a cessation or interruption in work for lien purposes, and that the lien should run from Harvey Gulf's original start date. Dkt. 5.

At issue is whether parties can contract around the requirements listed in the Louisiana Oil Well and Lien Act ("LOWLA"). This state statute governs whether parties have liens (or "privileges" in Louisiana) over certain oil, gas, and water well property to secure obligations and clearly discusses when a privilege is established and extinguished. La. Rev. Stat. §§9:4861, *et seq*. Harvey Gulf contends that the language in the Farmout Agreement modified the terms set out in LOWLA, allowing the parties to disregard any period of interruption or cessation. Dkt. 5 at 3. After reviewing the applicable Louisiana statutes and case law, the court finds that the Farmout Agreement is unenforceable as it relates to modifying the relation back requirement set out in LOWLA.[1]

In order to claim a Senior Lien under the Final Debtor in Possession Order, Harvey Gulf must establish that its work in 2012 relates back to a date that predated the Senior Lien Deadline of June 21, 2010. The Farmout Agreement is between ATP (farmor) and Harvey Gulf (farmee). Dkt. 5 at

---

[1] The court applies Louisiana law because the liens in question were recorded and perfected in Louisiana.

4

5. The relevant provision states:

> 2.1 Contribution: Notwithstanding the terms and Provisions of the Time Charters with respect to total per day charter hire rates invoiced by Farmee throughout the terms of the Time Charters for services provided by Farmee, the percentage of each invoiced amount as indicated on Exhibit 1 (the "Base Amount") will be payable in accordance with the Time Charters and Farmee shall have all available lien rights under applicable law for the Work, excluding the Farmout Related Services only (**provided however the Parties agree the Work shall not be deemed to have ceased or interrupted for lien purposes**).

Dkt. 5 (emphasis added).

Bennu argues that notwithstanding the contractual provision, Harvey Gulf's post-gap services cannot relate back to the initial start date. Dkt. 6. Harvey Gulf cannot modify LOWLA because these liens are "creatures of statute" and Louisiana case law has held that lien statutes must be strictly construed. *Id.* at 8-11; *Grand Lodge Knights, Ladies Auxiliary, Juveniles of Honor of America v. Charles*, 70 So. 2d 684, 790 (La. 1953) ("It is well recognized in our jurisprudence that liens and privileges are stricti juris and that the party who claims or asserts one must be able to put his finger on the law under which it is granted.").

Notwithstanding the terms outlined in LOWLA, Harvey Gulf relies principally on a party's general freedom "to contract for any object that is lawful, possible, and determined or determinable," and argues that private parties creating an exception to LOWLA's continuity requirement is permissible so long as the action does not "derogate from laws enacted for the protection of the public interest." Dkt. 5; La. C.C. arts. 7, 1971. Harvey Gulf explains that LOWLA was silent as to whether parties could modify its elements and that the Farmout Agreement does not violate public policy. Dkt. 5 at 15-16. Harvey Gulf further points out that the cases Bennu cited to were about the creation of a lien in a contract and do not address whether parties may use contract law to modify a statutory lien already in existence. Dkt. 7. The court addresses these arguments in turn.

5

**A. LOWLA's Statutory Requirements**

Both parties agree that LOWLA is the applicable law for the lien in question. Dkts. 5, 6. A privilege is established if:

> (1) The claimant, who is a contractor, laborer, or employee begins rendering services at the well site.
>
> (2) Movables sold by the claimant to an operator or contractor are delivered to the well site.
>
> (3) The claimant begins transporting movables to, or persons to or from, the well site.
>
> (4) Property leased by the claimant to an operator or contractor is placed on the well site for use in operations.

La. Rev. Stat. §9:4864(A).

Harvey Gulf asserts that its privilege began when it rendered services for ATP on May 31, 2009. Dkt. 5. However, pursuant to §9:4864(C), a privilege may not relate back to an earlier date if there is an interruption or cessation in activity for "more than ninety consecutive days."

> All obligations owed to a claimant arising from operations on the same operating interest, without a lapse of more than ninety consecutive days between an activity or event that establishes the privilege as described in Subsection A of this Section, are secured by a single privilege whether or not such activities are performed or events occur at different times and under several contracts with different operators or contractors. **If more than ninety consecutive days elapse between such activities or events, the privileges established before and those established after such time are separate.**

§9:4864(C) (emphasis added).

This court finds that the language of the statute is clear and that Harvey Gulf's almost one-year hiatus constitutes a gap that exceeded LOWLA's ninety-day continuity requirement. The facts indicate that Harvey Gulf rendered services for ATP during two intervals separated by a 352-day gap

6

from April 29, 2010 to April 11, 2011. Dkt. 2, Ex. 2. It is undisputed that the 352-day gap in services is greater than the statute's "lapse of more than ninety consecutive days between an activity or event." *Id.* This means that when Harvey Gulf resumed work for ATP after April 16, 2011, a new relation date was established, separate from Harvey Gulf's original start date of May 31, 2009. Harvey Gulf must prove that its alleged 2012 lien predates the Senior Lien Deadline of June 21, 2010, and it failed to do so. The court finds Harvey Gulf's lien for its 2012 work did not predate the Senior Lien Deadline because its one-year hiatus prevented it from relating back to May 31, 2009. Accordingly, the court AFFIRMS the Bankruptcy Court's findings.

### B. Whether Parties May Modify LOWLA

The Louisiana Appellate Courts have held that privileges may only be created by statute and have prohibited liens created by contract. "[P]rivileges are offsprings of the law and cannot be created by contract." *Smith v. Unity Indus. Life Ins. Co.*, 13 So. 2d 129, 131 (La. Ct. App. 1943); *Whittington v. Nelson Bros. Const. Co.*, 141 So. 491, 492 (La. Ct. App. 1932); *Capillon v. Chambliss*, 29 So. 2d 171 (La. 1946). Pursuant to Article 3185 of the Louisiana Revised Civil Code, "Privilege can be claimed only for those debts to which it is expressly granted in this Code." La. Stat. Ann. art 3185 (West 2006). Following this logic, the benefits and limitations of a statutory lien must also arise from the Code and are not for the parties to modify. Harvey Gulf does not point to any case law where parties were permitted to contractually modify a statutory lien and this court is unaware of any case law that permits parties to contractually modify the express terms of LOWLA or any other Louisiana statutory lien. Dkts. 5, 7.

Instead, Harvey Gulf analogizes to cases where parties have the freedom to contract, which may be applicable to other statutes, but are inapplicable to lien statutes. "[T]he operative effect of

a privilege may never be extended by implication or analogy to any situation not explicitly and precisely contemplated by the statute creating it." *Pelican State Associates, Inc. v. Winder*, 208 So. 2d 355, 357 (La.App. 1st Cir.1968), *writ issued*, 252 La. 178, 210 So. 2d 56 (1968) and *judgment reinstated*, 253 La. 697, 219 So. 2d 500 (1969). Indeed, Harvey Gulf's analogy to prescriptive periods (or statutes of limitation) is inapplicable because the Louisiana Supreme Court held that "*contractual* prescriptive periods" may not be lengthened as a matter of public policy but "such periods may be shortened upon agreement of the parties." *La. Health Serv. & Indem. Co. v. McNamara*, 561 So. 2d 712, 719 (La. 1990) (emphasis added).

Harvey Gulf goes on to describe how the Farmout Agreement does not violate public policy and that the "purpose of the Oil Well Lien Act is to protect those, like [the plaintiff], who contribute labor, services, and equipment to the drilling of wells from the default of those who engage them." Dkt. 5 at 16 (quoting *Guichard Drilling Co. v. Alpine Energy Servs., Inc.*, 657 So. 2d 1307, 1312 (La. 1995)). To comport with LOWLA's purpose and to effectuate the intent of the legislature, this court must interpret the statute strictly and follow the statute's express terms.

> When the wording of a [statute] is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. Rather, the law must be applied as written, and no further interpretation can be made in search of the intent of the legislature.

La. Stat. Ann. § 1:4. (West 2006). *See Taggert v. Our Lady Queen of Heaven Catholic Church*, 2004-1331 (La. App. 3 Cir. 2/2/05); 893 So. 2d 1001, 1001, *writ denied*, 2005-0569 (La. 4/29/05), 901 So. 2d 1072; *Patriot Const. & Equip., LLC v. Rage Logistics, LLC.*, 2015-1136 (La. App. 3 Cir. 4/6/16), 2016 WL 1358526 ("[P]ublic contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes.").

A strict interpretation of LOWLA would not allow for modification of the statute. The Farmout Agreement, to the extent that it seeks to modify LOWLA, is not enforceable. Accordingly, the Bankruptcy Court did not err when it ruled that the Farmout Agreement's attempt to modify the requirements of LOWLA was unenforceable. The Bankruptcy Court's granting of a motion for summary judgment in favor of Bennu is AFFIRMED.

### C. Whether Farmout Agreement is Applicable to Bennu

The court need not decide appellee's second issue of whether the Farmout Agreement is unenforceable as to Bennu as a third-party or whether Bennu "stands in the shoes" of ATP because the issue is not determinative of this case. Dkts. 6, 7.

### IV. Conclusion

The Bankruptcy Court's order granting summary judgment is AFFIRMED, and appellant's request for oral submission is DENIED.

Signed at Houston, Texas on September 20, 2016.

_____
Gray H. Miller
United States District Judge